**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ROSANA BOULHOSA NASSAR,

                Plaintiff,

v.                                      Case No. 3:14-cv-1501-J-34MCR

EDUARDO BOULHOSA NASSAR,

                Defendant.

_____/

# O R D E R

    **THIS CAUSE** is before the Court on (1) Defendant's Motion to Dismiss Amended Complaint and Memorandum in Support (Doc. 63; "Defendant's Motion to Dismiss"), filed on March 30, 2016; (2) Plaintiff's Motion to [sic] Judicial Notice (Doc. 66; "Plaintiff's Motion for Judicial Notice"), filed on April 11, 2016; and (3) Plaintiff's Renewed Motion for Leave to File Second Amended Complaint (Doc. 98; "Plaintiff's Motion to Amend"), filed on September 8, 2016. On April 11, 2016, Plaintiff, Rosana Boulhosa Nassar, filed her Opposition to Defendant's Motion to Dismiss Amended Complaint (Doc. 65; "Plaintiff's Response to Defendant's Motion to Dismiss"). Defendant, Eduardo Boulhosa Nassar, filed Defendant's Opposition to Plaintiff's Motion Seeking Judicial Notice (Doc. 71; "Defendant's Response to Plaintiff's Motion for Judicial Notice") on April 28, 2016. On May 31, 2016, Defendant filed Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Amended Complaint (Doc. 81; "Defendant's Reply to Motion to Dismiss"), and Plaintiff filed her Reply Brief to Defendant's Opposition to Plaintiff's Motion to Take Judicial Notice (Doc. 82; "Plaintiff's Reply to Motion for Judicial Notice"). Defendant filed Defendant's Opposition to Plaintiff's Renewed Motion for Leave to File

-1-

Second Amended Complaint (Doc. 100; "Defendant's Response to Plaintiff's Motion to Amend") on September 26, 2016. With leave of Court, on October 11, 2016, Plaintiff filed her Reply Brief to Defendant's Opposition to Plaintiff's Renewed Motion for Leave to File Second Amended Complaint (Doc. 103; "Plaintiff's Reply to Motion to Amend"). Accordingly, this matter is ripe for review.

## I.   Background

### A.   Plaintiff's Factual Allegations[1]

Plaintiff alleges that Defendant, a Brazilian citizen and Plaintiff's older brother, sexually assaulted Plaintiff when she was a child. Amended Complaint (Doc. 61) at 1–2. She asserts that Defendant also violated her privacy by entering her gynecologist's examination room without her permission when she was an adolescent. Id. at 2. "[T]o recover from her childhood trauma," in 1998 Plaintiff wrote a book in Portuguese titled (as translated) "The Freeing Power of Speech," in which she detailed "the abuse the defendant committed against her." Id. at 2–3. Since the publication of her book, Defendant has published false statements about Plaintiff online, including in a 2010 review of Plaintiff's book on the website "Goodreads.com" in which he wrote that Plaintiff has "serious psychological problems," a "personality disorder," and "paranoia." Id. at 2–3, 5–6, 9–10. Defendant also purchased the domain name "www.rosananassar.com" in 2010 and the domain name "www.newglobalpublishing.net" in 2005. Id. at 3, 11. The latter domain name is a reference to Plaintiff's publishing business, New Global Publishing;

---

[1] In considering the motions to dismiss, the Court must accept all factual allegations in the complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint, and may well differ from those that ultimately can be proved.

Plaintiff has owned the domain name "www.newglobalpublishing.com" since 2004. Id. at 3–4. Defendant has published false statements on rosananassar.com and newglobalpublishing.net similar to those published on Goodreads.com. Id. at 6, 10–11.

Since 2005, Defendant has, either directly or through an attorney, hired at least 35 private investigators and security officers from several different agencies "to stalk, investigate, place … under surveillance, guard, protect, recover and follow" Plaintiff. Id. at 4. In support of this allegation, Plaintiff includes her own research purportedly showing "a match between the investigators['] and security officers' car registration records and the professional licenses of the same investigators and security officers who have followed the plaintiff and have been in front of her [two] residences." Id. at 4–5. She received an anonymous text message that read, "I'm gonna kill u!!! Don't give anybody my cell number," which she perceived to be a threat, and which she concludes was sent by Defendant. Id. at 7, 18; see also Amended Complaint, Exh. J (images of text message). Plaintiff's publishing business has suffered as a result of Defendant's actions because Plaintiff "had to spend most of her time investigating the investigators and security officers who the defendant has been hiring." Id. at 4.

A Brazilian court issued a restraining order prohibiting Defendant from "hir[ing] investigators, security officers or contractors to protect, guard, investigate, conduct surveillance or to follow" Plaintiff. Id. at 7, 19. However, the order has since expired. Id. at 19.

### B.    Prior Proceedings in State Court[2]

On July 16, 2012, Defendant[3] filed a complaint in the Circuit Court in and for St. Lucie County, Florida alleging that Plaintiff had published defamatory statements about Defendant related to Plaintiff's claims that Defendant had abused her and had hired private investigators to stalk her. See Verified Complaint (Doc. 24-2; "State Court Complaint") ¶ 2. In response, Plaintiff filed a Counterclaim, seeking damages for (1) lost wages "resulting from intense and repeated stalking and torture inflicted on" her; (2) "emotional and physical distress" resulting from Defendant's hiring of 35 investigators and

---

[2] In the Motion, Defendant asks the Court to take judicial notice of the proceedings in an earlier case he had filed in state court in St. Lucie County, Florida. See Defendant's Motion to Dismiss at 2 n.1. Previously in this Court, Defendant had filed a motion requesting that the Court take judicial notice of those proceedings, see Defendant's Renewed Motion to Take Judicial Notice and Incorporated Memorandum of Law (Doc. 24), and Plaintiff opposed the request, but the Court denied it as moot after allowing Plaintiff to amend her Complaint, see Order (Doc. 62). In responding to the Motion to Dismiss, Plaintiff did not respond to the renewed request that the Court take judicial notice of the state court proceeding. Nevertheless, in an abundance of caution, the Court considered Plaintiff's previously filed Opposition to Defendant's "Renewed" Motion to Take Judicial Notice and Incorporated Memorandum of Law (Doc. 28). In opposing Defendant's motion to take judicial notice of the state court proceedings, Plaintiff argued that Defendant could not rely on those proceedings to support his res judicata argument because the state court dismissed her counterclaims for lack of jurisdiction. See generally id.

At any stage of a proceeding, a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (d). A court may take judicial notice on its own, but it "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(1)–(2). "On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." Fed. R. Evid. 201(e). If a court takes judicial notice of a fact without notifying a party, that party is entitled to be heard on request. Id. "Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage." U.S. ex rel. Osheroff v. Humana, Inc., 776 F.3d 805, 811 n.4 (11th Cir. 2015).

Judicial notice of the prior state court proceedings is appropriate here because the nature of the proceedings and the contents of the filings in that case may be accurately and readily determined from the state court's docket, the accuracy of which cannot reasonably be questioned. Although Plaintiff contends that those proceedings do not support Defendant's res judicata argument, that contention is misplaced. Whether the documents ultimately support Defendant's position is a different matter from whether the documents are appropriate subjects of judicial notice. Having concluded that it may take judicial notice of the prior state court proceedings, the Court summarizes those proceedings in this section.

[3] Although the parties were in opposite roles in the state court litigation (in that Defendant was the plaintiff in that case, while Plaintiff was the defendant), to avoid confusion the Court will continue to refer to the parties based on their respective roles in this case.

security officers to conduct surveillance; and (3) Defendant's purchase of newglobalpublishing.net, rosananassar.com, and a third domain name, www.thefirstlove.com (a purported reference to one of Plaintiff's books). See Counterclaim (Doc. 24-3; "State Court Counterclaim") at 1–4. On March 17, 2014, Defendant moved to dismiss Plaintiff's Counterclaim, arguing that Plaintiff failed to clearly and concisely plead her counterclaims, failed to establish that the state court had personal jurisdiction over Defendant with respect to the counterclaims, and was in default because she failed to respond to Defendant's underlying claims. See [Defendant's] Motion to Dismiss Counterclaim and for Entry of Default Judgment (Doc. 24-4; "Motion to Dismiss State Court Counterclaim") at 2–6. Plaintiff amended her Counterclaim on May 20, 2014. See Counter-Plaintiff's Ammended [sic] Counter-Claim and Answer to Counter-Defendant's Claim (Doc. 24-5; "Amended State Court Counterclaim"). On June 26, 2014, Defendant moved to dismiss that Counterclaim as well, again arguing that Plaintiff had failed to clearly and concisely plead her counterclaims and had failed to adequately allege a basis for personal jurisdiction over Defendant. See [Defendant's] Motion to Dismiss Amended Counterclaim (Doc. 24-6; "Motion to Dismiss Amended State Court Counterclaim"). The state court granted Defendant's motion on August 25, 2014, dismissed Plaintiff's Counterclaim, and granted Plaintiff leave to amend to allege "a short and plain statement of the facts and appropriate jurisdictional allegations." See Order (Doc. 24-7; "State Court Order on Motion to Dismiss Amended Counterclaim") at 1.

Plaintiff filed a third[4] amended counterclaim on August 27, 2014. <u>See</u> [Plaintiff's] Verified Amended Counter-Claim (Doc. 24-8; "Third Amended State Court Counterclaim"). In it, Plaintiff alleged that Defendant had "been stalking [Plaintiff] … since 2005 through Private investigators and security officers." <u>Id.</u> at 2. She alleged that Defendant had "made numerous offensive websites under [Plaintiff's] name, business and books associated with her as a retaliation to her writings about the sexual abuse," including rosananassar.com and newglobalpublishing.net. <u>Id.</u> at 2–3. She alleged that Defendant had falsely stated on those websites that Plaintiff suffered from "'serious psychological problems', 'personality disorder', and paranoia." <u>Id.</u> at 3. After spending considerable time responding to Defendant's argument that the state court lacked personal jurisdiction over Defendant with respect to Plaintiff's counterclaims, Plaintiff raised four counterclaims against Defendant: (1) "[i]ntellectual [p]roperty [d]amage," based on Defendant's purchase of the above-mentioned domain names; (2) defamation, based on Defendant's "derogatory comments," including the above-mentioned statements concerning Plaintiff's mental health; (3) stalking, based on Defendant's alleged hiring of private investigators and security officers beginning in 2005; and (4) intentional infliction of emotional distress, based on the same grounds as Plaintiff's stalking claim. <u>See</u> <u>id.</u> at 3–10.

On September 18, 2014, Defendant moved to dismiss Plaintiff's Third Amended State Court Counterclaim with prejudice, arguing that (1) Plaintiff had failed "to succinctly plead ultimate facts" supporting any of her claims; (2) Plaintiff's defamation claim was

---

[4] Plaintiff filed her second amended counterclaim on August 25, 2014. <u>See</u> [Defendant's] Motion to Dismiss Third Amended (Fourth) Counterclaim With Prejudice (Doc. 24-9; "Motion to Dismiss Third Amended State Court Counterclaim") at 1–2. She filed her third amended counterclaim two days later.

time-barred; (3) Plaintiff had failed to state a claim for defamation; and (4) Florida law does not recognize a claim for "intellectual property damage." See [Defendant's] Motion to Dismiss Third Amended (Fourth) Counterclaim With Prejudice (Doc. 24-9; "Motion to Dismiss Third Amended State Court Counterclaim") at 3–5. On November 24, 2014, the Court granted Defendant's motion "for the reasons contained in [the] motion which are incorporated herein by reference" and precluded Plaintiff from further amending her counterclaim. See Order (Doc. 24-10; "Order on Motion to Dismiss Third Amended State Court Counterclaim") at 1. Following the dismissal, on December 1, 2014, Defendant voluntarily dismissed his lawsuit against Plaintiff. See Notice of Dismissal (Doc. 24-11; "State Court Notice of Dismissal").  Plaintiff did not pursue an appeal.

### C.    Procedural History of this Case

Plaintiff filed her Verified Complaint (Doc. 1; "Complaint") against Defendant on December 17, 2014. Although she initially sought leave to proceed in forma pauperis, see Docs. 2–4, she paid the $400 filing fee in January 2015. Defendant then filed Defendant's Motion to Dismiss and Memorandum in Support (Doc. 16; "First Motion to Dismiss"). After responding to the First Motion to Dismiss, Plaintiff filed an Amended Complaint which was stricken because she did not obtain Defendant's consent or leave of Court, and the Amended Complaint was untimely if filed as a matter of right. See Order (Doc. 43). Thereafter, Plaintiff sought, and was given, leave to file an Amended Complaint, see Order (Doc. 57), which she filed on March 18, 2016.[5] In her Amended Complaint, Plaintiff

---

[5] The docket shows that Plaintiff first filed an Amended Complaint on March 16, 2016, the same day the Court granted her motion for leave to amend the Complaint. See Doc. 60. Because the Amended Complaint filed on March 18 includes various attachments Plaintiff references in the Amended Complaint, and because it is otherwise identical to the document filed on March 16, the Court will cite the Amended Complaint filed on March 18.

asserts three claims. In Count I, Plaintiff brings a claim for "Cyberpiracy and Cybersquatting in Connection with Internet Domain Names" pursuant to 15 U.S.C. § 1125(d), based on Defendant's alleged purchase of rosananassar.com and newglobalpublishing.net.[6] Amended Complaint at 7–8. In Count II, she brings a claim for defamation based on the statements Defendant allegedly published on Goodreads.com and the unlawfully purchased domain names. Id. at 9–12. In Count III, Plaintiff brings a claim for intentional infliction of emotional distress based on Defendant's alleged hiring of private investigators and security officers to follow and observe Plaintiff, which Plaintiff contends amounts to criminal stalking. Id. at 12–20.

On March 30, 2016, Defendant filed Defendant's Motion to Dismiss, arguing that all of Plaintiff's claims are barred by res judicata, her defamation claim is barred by the statute of limitations, and the Amended Complaint fails to allege facts sufficient to state a claim for intentional infliction of emotional distress. See generally Defendant's Motion to Dismiss. On April 11, 2016, Plaintiff filed Plaintiff's Motion for Judicial Notice, in which she asks the Court to take judicial notice of "information contained within the archives of www.waybackmachine.org" with respect to rosananassar.com, newglobalpublishing.net, and Goodreads.com. See Plaintiff's Motion for Judicial Notice at 1–2. Most recently, on September 8, 2016, Plaintiff filed Plaintiff's Motion to Amend, in which she requests leave to file a second amended complaint to include newly discovered evidence, "[d]escribe in detail" specific incidents underlying her claims, eliminate her defamation claim, and add an additional "cyberpiracy" claim and a claim for invasion of privacy. See Memorandum

---

[6] Although Plaintiff appears to refer exclusively to newglobalpublishing.net, in an abundance of caution, the Court assumes she also intends to base her claim in Count I on Defendant's purchase of rosananassar.com.

in Support of Plaintiff's Renewed Motion for Leave to File Second Amended Complaint (Doc. 98-1) at 1–2. Defendant opposes the Motion to Amend. See Defendant's Response to Plaintiff's Motion to Amend. The Court will consider Plaintiff's Motion for Judicial Notice before turning to Defendant's Motion to Dismiss.

## II.   Analysis

### A.   Plaintiff's Motion for Judicial Notice

Plaintiff asks the Court to take judicial notice of the appearance of certain websites on particular dates. See Plaintiff's Motion for Judicial Notice at 1–2. She asks that the Court "register and acknowledge the existence of these webpages contained within their archives for evidentiary reasons, as the internet is a very volatile environment." Id. at 1. Defendant responds that the contents of the websites cannot be readily and accurately determined from sources whose accuracy cannot reasonably be questioned, as even waybackmachine.org disclaims any guarantee as to the accuracy of the information it displays. See Defendant's Response to Plaintiff's Motion for Judicial Notice at 1–4.

As previously discussed, at any stage of a proceeding, the Federal Rules of Evidence provide that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (d). Further, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

Plaintiff does not indicate whether she believes judicial notice is appropriate under subsection (b)(1) or subsection (b)(2) of Federal Rule of Evidence 201. See generally

Plaintiff's Motion for Judicial Notice. However, the Court readily concludes that the information Plaintiff asks the Court to judicially notice is not generally known in this or any other jurisdiction, because it relates to the historical contents of privately owned websites as they appeared on particular dates more than six years ago. As such, judicial notice would be appropriate only if that information "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court concludes that the historical appearance of the three websites Plaintiff identifies simply is not the type of information that the Court may judicially notice. In general, non-governmental websites are not proper subjects of judicial notice. See Gaza v. LTD Fin. Servs., L.P., No. 8:14-cv-1012-T-30JSS, 2015 WL 5009741, at *2 (M.D. Fla. Aug. 24, 2015) (citing Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1274 (11th Cir. 2014)). Moreover, the organization that maintains waybackmachine.org[7] itself disclaims any guarantee that the results it produces are accurate. See Internet Archive Wayback Machine, Internet Archive's Terms of Use, Privacy Policy, and Copyright Policy, dated Dec. 31, 2014, available at http://archive.org/about/terms.php (last visited October 13, 2016) ("You understand and agree that the Archive makes no warranty or representation regarding the accuracy, currency, completeness, reliability, or usefulness of the content in the Collections."). In light of that, and because Plaintiff otherwise has made no showing that the accuracy of the Internet archive cannot reasonably be questioned, judicial notice of the historical contents of the websites is inappropriate.

In any event, even if judicial notice were appropriate, the Court would not need to do so in order to evaluate Defendant's Motion to Dismiss or Plaintiff's Motion to Amend.

---

[7] Entry of the URL "http://www.waybackmachine.org" redirects to the URL "http://archive.org."

At this stage of the proceedings, the Court must accept Plaintiff's allegations as to the contents of those websites as true. Nevertheless, for the reasons discussed in Parts II.B and II.C of this Order, even accepting Plaintiff's representations as to the content of the websites, Plaintiff's claims related to rosananassar.com, newglobalpublishing.net, and Goodreads.com are due to be dismissed.

### B.    Defendant's Motion to Dismiss

Defendant seeks dismissal of Plaintiff's Amended Complaint, contending that res judicata bars her claims because she already litigated them in an earlier state-court case. Defendant's Motion to Dismiss at 2–20. Defendant also argues that Plaintiff's defamation claim is untimely, and her claim of intentional infliction of emotional distress is due to be dismissed because she fails to allege facts sufficient to state a plausible claim. Id. at 20–24. Plaintiff responds that res judicata does not apply because, in her view, the state court lacked personal jurisdiction over Defendant with respect to Plaintiff's counterclaims and dismissed those counterclaims on that basis. Plaintiff's Response to Defendant's Motion to Dismiss at 1–3. Additionally, she asserts that the state court's decision was not a "final judgment on the merits" because it did not follow a trial. Id. at 4. She also contends that the causes of action in this case are not identical to those she asserted in the state court case. Id. She argues that her defamation claim is not barred by the statute of limitations, and that she adequately alleges a claim for intentional infliction of emotional distress. Id. at 4–11. In his Reply, Defendant asserts that his final motion to dismiss Plaintiff's counterclaims in the state court action did not raise lack of jurisdiction as a basis for dismissal, so the state court's dismissal order on which Defendant relies for his res judicata argument constitutes a judgment on the merits. Defendant's Reply to Motion to

Dismiss at 1–2. He also contends that no trial was necessary for the state court's order to constitute a judgment on the merits. Id. at 2–3. Last, he asserts that Plaintiff's alleged newly discovered evidence does not affect the outcome of the case. Id. at 3–4.

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted

deductions of facts or legal conclusions masquerading as facts will not prevent dismissal")
(internal citation and quotations omitted). Indeed, "the tenet that a court must accept as
true all of the allegations contained in a complaint is inapplicable to legal conclusions,"
which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678,
680-81. Thus, in ruling on a motion to dismiss, the Court must determine whether the
complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

    In determining whether to give preclusive effect to a state court judgment, a federal
court sitting in diversity jurisdiction must apply the res judicata principles of the state court.
Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1509 (11th Cir. 1985); Arthur v.
JP Morgan Chase Bank, NA, 569 F. App'x 669, 676 (11th Cir. 2014) ("When evaluating
the effect of a state court judgment, we apply the preclusion law of the rendering state.").
As such, because the Order on Motion to Dismiss Third Amended State Court
Counterclaim was issued by a Florida Court, the Court looks to Florida law. Under Florida
law,

> A judgment on the merits rendered in a former suit between the same
> parties or their privies, upon the same cause of action, by a court of
> competent jurisdiction, is conclusive not only as to every matter which was
> offered and received to sustain or defeat the claim, but as to every other
> matter which might with propriety have been litigated and determined in that
> action.

Fla. Dep't of Transp. v. Juliano, 801 So. 2d 101, 105 (Fla. 2001) (emphasis omitted).
Thus, for res judicata to apply under Florida law, there must be:

> (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity
> of the persons and parties to the action; (4) identity of the quality or capacity
> of the persons for or against whom the claim is made; and (5) the original
> claim was disposed on the merits.

Lozman v. City of Riviera Beach, Fla., 713 F.3d 1066, 1074 (11th Cir. 2013) (internal quotation marks and alteration omitted).[8] "Importantly, the doctrine of res judicata not only bars issues that were raised, but it also precludes consideration of issues that could have been raised but were not raised in the first case." Juliano, 801 So. 2d at 105. "The policy 'underlying res judicata is that if a matter has already been decided, the petitioner has already had his or her day in court, and for purposes of judicial economy, that matter generally will not be reexamined again in any court (except, of course, for appeals by right).'" See Zikofsky v. Marketing 10, Inc., 904 So. 2d 520, 523 (Fla. 4th Dist. Ct. App. May 25, 2005) (quoting Topps, 865 So. 2d at 1255).

Two cases involve the same "thing sued for" if the party against whom res judicata is invoked is seeking the same relief requested in the previous action. AMEC Civil, LLC v. State, Dep't of Transp., 41 So. 3d 235, 242 (Fla. 1st DCA 2010); Jenkins v. Lennar Corp., 972 So. 2d 1064, 1066 (Fla. 3d DCA 2008); see also Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1509 (11th Cir. 1985) (finding, where plaintiff sued for $2500 in damages in first case and $35,000 in damages in second case, "[i]dentity of the thing sued for exists—damages"). "Claims are considered the 'same cause of action' if the facts essential to the maintenance of both actions are the same, that is, if the evidence in both cases is in essence the same." Madura v. Countrywide Home Loans, Inc., 344 F. App'x

---

[8]Citing Twigg v. Sears, Roebuck & Co., 153 F.3d 1222, 1225 (11th Cir. 1998), Defendant asserts the elements for res judicata are "(1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) identity of the parties; and (4) identity of the causes of action." Defendant's Motion to Dismiss at 12. However, Twigg did not address the elements of res judicata under Florida law, instead citing Kemp v. Birmingham News Co., 608 F.2d 1049, 1052 (5th Cir. 1979), which applied federal res judicata principles for the general elements of claim preclusion. Twigg, 153 F.3d at 1225.

Although the elements Defendant identifies are similar to the formulation from Juliano, the Court will evaluate his res judicata argument under the elements listed above, which accord with the Florida Supreme Court's more recent formulation of the doctrine. See The Florida Bar v. St. Louis, 967 So. 2d 108, 119 (Fla. 2007); Topps v. State, 865 So. 2d 1253, 1255 (Fla. 2004). In any event, the Court's decision would be the same under either formulation.

509, 517 (11th Cir. 2009) (citing <u>Gordon v. Gordon</u>, 59 So. 2d 40, 44 (Fla. 1952)). A subsequent case satisfies the requirement of "identity of the quality in the person for or against whom the claims are made" when the defendant in that case is being sued "in the same capacity vis-à-vis" the plaintiff as in the previous action. <u>Jenkins</u>, 972 So. 2d at 1066.

### 1.    Identity of the Thing Sued For

Neither party addresses this requirement. <u>See</u> <u>generally</u> Defendant's Motion to Dismiss; Plaintiff's Response to Motion to Dismiss. Nevertheless, in this case, Plaintiff seeks the same relief she sought through her State Court Counterclaims: a permanent injunction prohibiting Defendant from hiring people to conduct surveillance of her, and $243,000 in damages for loss of her business income.[9] <u>See</u> Amended Complaint at 20; Third Amended State Court Counterclaim at 10–11. As such, this requirement is satisfied. <u>See</u> <u>AMEC</u>, 41 So. 3d at 242; <u>Jenkins</u>, 972 So. 2d at 1066.

### 2.    Identity of the Causes of Action

Plaintiff argues that her federal cybersquatting claim "was not stated in" her Third Amended State Court Counterclaim, so there is no "identity of the causes of action" as to that claim. Plaintiff's Response to Motion to Dismiss at 4. She also asserts that she has recently discovered that Defendant's allegedly defamatory contents are still retrievable online through Internet archives. <u>Id.</u> at 4–5. As to her claims for intentional infliction of

---

[9] That Plaintiff also seeks "[a]dditional damages for pain and suffering that the court may deem just," <u>see</u> Amended Complaint at 20, does not affect the Court's analysis because those damages, like her damages for lost wages, flow from the same allegedly tortious conduct. <u>See</u> <u>AMEC</u>, 41 So. 3d at 242 (finding identity of the thing sued for where, in both cases, the plaintiff sought "money damages allegedly sustained by AMEC as a result of the Department's breach of the indivisible contract").

emotional distress, Plaintiff apparently does not dispute that she previously raised identical claims in her State Court Counterclaims. See generally id.

As previously discussed, claims involve "the 'same cause of action' if the facts essential to the maintenance of both actions are the same, that is, if the evidence in both cases is in essence the same." Madura, 344 F. App'x at 517. Plaintiff previously raised a claim for "[i]ntellectual [p]roperty [d]amage" in her Third Amended State Court Counterclaim. See Third Amended State Court Counterclaim at 8–9. Although Plaintiff's theory of recovery as to that claim remains unclear, she alleged, in support of the claim, that Defendant had "purchased online domain names which were of commercial and personal value to" her. Id. at 8. To the extent that Plaintiff's state court counterclaim for intellectual property damage was based on Defendant's purchase of a domain name—newglobalpublishing.net—that referenced the name of her business, the "facts essential to the maintenance of" that claim are identical to the "facts essential to the maintenance of" her federal cybersquatting claim.[10] To state a claim for cybersquatting under 15 U.S.C. § 1125(d), a plaintiff must show, among other things, that the defendant "register[ed], traffic[ked] in, or use[d] a domain name that … is identical or confusingly similar to" the plaintiff's trademark. 15 U.S.C. § 1125(d)(1)(A)(i)–(ii). Thus, Plaintiff's cybersquatting claim in her Amended Complaint requires "in essence" the same evidence on which she relied to support her intellectual property damage counterclaim in state court. Moreover, Plaintiff's cybersquatting claim, which is based on the exact same conduct underlying her

---

[10] Although Plaintiff alleges in her Amended Complaint that Defendant also wrongfully purchased the rosananassar.com domain, she apparently does not base her cybersquatting claim on that domain name. See Amended Complaint at 7–9. In any event, Plaintiff had based her intellectual property counterclaim in state court on Defendant's alleged purchase of that domain name as well, so the same analysis would apply even if she had asserted Defendant's alleged purchase of the rosananassar.com domain as a basis for her cybersquatting claim in this case.

intellectual property damage counterclaim, indisputably "could have been raised" during the state court proceedings. See Juliano, 801 So. 2d at 105.[11]

Plaintiff does not directly challenge Defendant's assertion that her defamation claim in this case is based on the same evidence underlying her defamation counterclaim in the state court proceedings. Instead, she simply observes that she only recently learned that the allegedly defamatory statements are still visible through Internet archives. See Plaintiff's Response to Motion to Dismiss at 4–5. However, that purportedly newly discovered evidence does not change the fact that Plaintiff is attempting to base a defamation claim on the exact same allegedly defamatory statements on which she based her prior defamation counterclaim. In both cases, she asserted that Defendant allegedly defamed her by stating that Plaintiff suffers from serious psychological problems, a personality disorder, and paranoia. See Third Amended State Court Counterclaim at 9; Amended Complaint at 10. Because Plaintiff previously sought and was denied relief based on those statements, the identity of the cause of action requirement is satisfied as to her defamation claim.[12]

---

[11] To the extent Plaintiff's intellectual property damage counterclaim in state court was based in part on allegedly defamatory statements on newglobalpublishing.net and rosananassar.com, the counterclaim overlapped with her defamation counterclaim, which the Court addresses separately.

[12] The Court observes that some aspects of Plaintiff's previous and current defamation claims are unclear. Specifically, it is unclear (1) whether both claims are based on alleged defamatory statements on both rosananassar.com and Goodreads.com; and (2) whether Plaintiff alleged that statements other than those previously discussed are defamatory. Plaintiff's state court counterclaim for defamation appears to be based only on the alleged statements on rosananassar.com, although she also attaches as an exhibit the alleged statements from Goodreads.com. See Third Amended State Court Counterclaim at 9. Plaintiff's defamation claim in this case, by contrast, references statements on Goodreads.com as well as statements on rosananassar.com and newglobalpublishing.net. See Amended Complaint at 9–11.

Because it is difficult to determine which allegedly defamatory statements underlie Plaintiff's state court counterclaim and her claim in this case, it is possible that she bases her defamation claim in this case, at least in part, on alleged statements that were not addressed in her state court counterclaim, such that res judicata would not necessarily bar her claim. However, to the extent that is the case, her defamation claim nevertheless is barred by the applicable statute of limitations. As plaintiff acknowledges, defamation claims are subject to a two-year statute of limitations. See Fla. Stat. § 95.11(4)(g); see also Amended Complaint at 10 (acknowledging two-year statute of limitations). But Plaintiff fails to acknowledge that the

Finally, although not challenged by Plaintiff, the Court concludes that Plaintiff's claim for intentional infliction of emotional distress in this case is the same cause of action she raised in state court. Plaintiff previously raised a counterclaim for intentional infliction of emotional distress based on Defendant's "hiring [of] investigators and security officers." See Third Amended State Court Counterclaim at 10. Likewise, in this case, Plaintiff has brought a claim for intentional infliction of emotional distress based on the allegation that Defendant "hired investigators and security officers to place [her] under 'surveillance', to stalk, harass, and threaten her." Amended Complaint at 12. Because her claim in this case is identical to her counterclaim in the state court proceedings, the identity of the cause of action requirement is satisfied as to this claim as well.[13]

---

statute of limitations begins to run at the time of the first publication of an alleged defamatory statement. See Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan, 629 So. 2d 113, 114–15 (Fla. 1993); Fla. Stat. § 95.031 ("[T]he time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues."); Fla. Stat. § 770.07 ("The cause of action for damages founded upon a single publication or exhibition or utterance … shall be deemed to have accrued at the time of the first publication or exhibition or utterance thereof in [Florida].").

In any event, Plaintiff's Motion to Amend, discussed infra at pages 24-27. Plaintiff has indicated her intention to drop her defamation claim from this case. See Doc. 98-1 at 2; see generally Proposed Second Amended Complaint. Accordingly, the Court considers it abandoned.

[13] Notably, in her Amended Complaint Plaintiff alleges that she received an anonymous "life threatening" text message on an unidentified date. Amended Complaint at 18. The message stated, "I am gonna kill u! Don't give anybody my cell number." Id.; see also Amended Complaint, Exh. J (Doc. 61-10) (images of text message). She concludes that the message must have been sent by Defendant because it was sent "from area code '91' which is from [Defendant's] city of Belem, State of Para, country of Brazil, where [D]efendant lives." Id. at 18–19. However, Plaintiff misreads the telephone number from which the message was sent. The full number has a country code of "1," indicating a United States telephone number, whereas the country code for Brazil is 55. Although this reading conflicts with Plaintiff's allegation that the message originated from a telephone number associated with Brazil, the Court may rely on the exhibit instead of Plaintiff's allegation. See Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint conflict with the exhibit itself, the exhibit controls. The classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself."). As such, Plaintiff's only allegation linking the alleged threatening message to Defendant is a conclusion which appears to be based on a misreading of the sender's telephone number. This allegation, to the extent it could support a claim not previously raised during the state court proceedings, fails to state a claim as to Defendant because Plaintiff fails to allege any facts linking the message to Defendant.

### 3. Identity of the Parties

Plaintiff does not dispute that the State Court Action involved the same parties. See Plaintiff's Response to Motion to Dismiss at 1. As such, this requirement is satisfied.

### 4. Identity of the Quality or Capacity of the Persons for or Against Whom the Claim Is Made

Neither party addresses the fourth requirement. See generally Defendant's Motion to Dismiss; Plaintiff's Response to Motion to Dismiss. Upon review of the relevant pleadings, the Court readily concludes the parties are suing and being sued in the same capacity as in the State Court Action—that is, Plaintiff, individually, is suing Defendant in his individual capacity based on actions Defendant is alleged to have taken in his individual capacity. Thus, this requirement is satisfied. See Jenkins, 972 So. 2d at 1066.

### 5. Final Judgment on the Merits

As to this requirement, the parties strongly disagree. This is not surprising as the Court acknowledges some ambiguity as to the nature of the state court's dismissal of Plaintiff's counterclaims. Although Defendant is correct that his Motion to Dismiss Plaintiff's Third Amended State Court Counterclaim focused on merits-based arguments, the motion nevertheless reiterated Defendant's position that Plaintiff had failed to establish the state court's personal jurisdiction over Defendant with respect to Plaintiff's counterclaims. See Motion to Dismiss Third Amended State Court Counterclaim at 2–3. Further complicating the issue is the fact that the state court did not independently state the reasons for its decision for dismissal of Plaintiff's counterclaims; instead, it adopted and incorporated Defendant's assertions into its order. Additionally, the Court did not independently state whether its dismissal was with or without prejudice.

Nevertheless, the Court concludes that the circumstances of the state court's dismissal of Plaintiff's counterclaims reflect with sufficient clarity that the state court dismissed the counterclaims with prejudice, and its order constitutes a final judgment on the merits. Upon review of the relevant motion in the state court, the Court concludes that Defendant did not seek dismissal of Plaintiff's Third Amended State Court Counterclaim based on lack of personal jurisdiction, but instead sought dismissal of her counterclaims on the merits. See generally Motion to Dismiss Third Amended State Court Counterclaim at 1. In doing so, Defendant specifically moved to dismiss Plaintiff's counterclaims with prejudice. See id. Notably, a dismissal for lack of personal jurisdiction is not an adjudication on the merits. See Fla. R. Civ. P. 1.420(b). Indeed, in moving to dismiss Plaintiff's earlier counterclaims based in part on lack of personal jurisdiction, Defendant did not request dismissal with prejudice. See Motion to Dismiss State Court Counterclaim; Motion to Dismiss Amended State Court Counterclaim. Moreover, Defendant's Motion to Dismiss the Third Amended State Court Counterclaim, although mentioning the purported absence of personal jurisdiction, stated more than once the reasons underlying Defendant's request for dismissal, none of which included lack of personal jurisdiction. See Motion to Dismiss Third Amended State Court Counterclaim at 3–5. Indeed, no reading of Defendant's motion would support a conclusion that it raised lack of jurisdiction as a basis for dismissal. Additionally, because the state court appears to have granted the specific relief Defendant requested—dismissal with prejudice—and did not in any way suggest that the dismissal was without prejudice or was not based on the merits, the Court determines the state court's order to be a final judgment on the merits. See Fla. R. Civ. P. 1.420(b) ("Unless the court in its order for dismissal otherwise specifies, a

dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication on the merits.").

Plaintiff asserts that the state court's Order Dismissing the Third Amended State Court Counterclaim cannot constitute a final judgment because it did not follow a "full trial." She is incorrect. Preliminarily, the Court observes that it is unclear whether Plaintiff's counterclaims were permissive or compulsory. If permissive, the state court's dismissal of Plaintiff's counterclaims would be "a final order subject to appeal, provided" it otherwise met the test of finality. Cunningham v. MBNA Am. Bank, N.A., 8 So. 3d 438, 440 (Fla. 2d DCA 2009). If compulsory, the state court's dismissal of Plaintiff's counterclaims would not be "an appealable final order until a final disposition of the underlying case." Id. Here, it makes no difference whether Plaintiff's counterclaims were permissive or compulsory because Defendant voluntarily dismissed his case on December 1, 2014, rendering the state court's order dismissing Plaintiff's counterclaims final and appealable even if those counterclaims were compulsory. See Johnson v. Allen, Knudsen, DeBoest, Edwards & Rhodes, P.A., 621 So. 2d 507, 509 (Fla. 2d DCA 1993) (finding counter-plaintiffs could appeal order dismissing counterclaims with prejudice following counter-defendant's voluntary dismissal of original claim). As such, the state court's order constitutes a final judgment on the merits for purposes of the res judicata analysis.

### 6.    Court of Competent Jurisdiction

As previously discussed, only a final judgment on the merits rendered by a court of competent jurisdiction may bar a subsequent suit raising the same claims. See Juliano, 801 So. 2d at 105. Plaintiff contends that the state court lacked personal jurisdiction over

Defendant with respect to her counterclaims, so that court was not a "court of competent jurisdiction." Plaintiff's Response to Motion to Dismiss at 1–3. However, because the Court previously concluded that Defendant did not seek dismissal of Plaintiff's Third Amended State Court Counterclaim based on lack of personal jurisdiction, Defendant implicitly consented to the state court's personal jurisdiction over him in the prior proceedings by submitting to that court's jurisdiction and arguing only the merits of Plaintiff's counterclaims. See Snider v. Metcalfe 157 So. 3d 422, 424–25 (Fla. 4th DCA 2015) (observing that a defendant may waive defense of lack of personal jurisdiction by "tak[ing] any steps in the proceeding constituting submission to the court's jurisdiction"; finding defendant had taken no such steps). Although Defendant initially challenged the state court's personal jurisdiction over him, the state court permitted Plaintiff to amend her counterclaims, and she did so. Her Third Amended State Court Counterclaim contained additional allegations and argument supporting her assertion that the state court had personal jurisdiction over Defendant. Defendant then declined to challenge the state court's personal jurisdiction over him based on the amended allegations, and instead sought dismissal on the merits.

Moreover, the Court observes that the state court had personal jurisdiction over Defendant with respect to Plaintiff's counterclaims. For a court in Florida to exercise personal jurisdiction over a defendant not located in Florida, Florida's long-arm statute, Florida Statutes section 48.193, must reach the defendant and the defendant must have sufficient contacts with the state such that the exercise of jurisdiction would not offend due process. Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1350 (11th Cir. 2013). Florida's long-arm statute provides for two types of jurisdiction. Id. at 1352. While

subparagraph two of section 48.193 confers general jurisdiction over defendants "engaged in substantial and not isolated activity within [Florida]" irrespective of any nexus between the defendant's activity and the cause of action, subparagraph one confers jurisdiction over specific causes of action "arising from" one of the enumerated acts. See id.; Fla. Stat. § 48.193(1), (2). As relevant here, section 48.193(1) provides that a non-resident is subject to the jurisdiction of Florida courts to the extent that the cause of action arises from a defendant's "[c]ommi[ssion of] a tortious act within th[e] state." Fla. Stat. § 48.193(1)(a)(2). In Plaintiff's Third Amended State Court Counterclaim Plaintiff alleged that Defendant defamed Plaintiff through internet postings, hired investigators located in Florida to "stalk" Plaintiff in Florida, and purchased domain names bearing Plaintiff's name and her business's name to harm Plaintiff's personal and business reputation in Florida. Those allegations are sufficient to support that Plaintiff's state court counterclaims arose from Defendant's alleged commission of tortious acts in Florida such that Florida's long-arm statute is satisfied. Additionally, the Court observes that, under those circumstances (where Plaintiff alleges that Defendant committed serious intentional torts against Plaintiff in Florida), the exercise of personal jurisdiction over Defendant with respect to Plaintiff's counterclaims would not offend due process. Cf. Silver v. Levinson, 648 So. 2d 240, 243–44 (Fla. 4th DCA 1994) (finding exercise of personal jurisdiction did not offend due process where defendant had "committed an intentional act directly aimed at Florida and made accusations targeted at a Florida resident," so he "purposefully directed his activities at Florida.").

The Court's conclusion that the state court had personal jurisdiction over Defendant is not inconsistent with the basis for Defendant's initial challenge to the state

court's personal jurisdiction over him. He argued only that Plaintiff's counterclaims were not compulsory, and so the state court did not <u>automatically</u> have personal jurisdiction over him as to those claims. <u>See</u> [Defendant's] Motion to Dismiss Counterclaim and for Entry of Default Judgment (Doc. 24-4) at 5–6; [Defendant's] Motion to Dismiss Amended Counterclaim (Doc. 24-6) at 3–5.[14]

In consideration of the foregoing, the Court determines that Defendant has established that all of the requirements for application of res judicata are satisfied here. As such, the Motion is due to be granted to the extent that the Court finds the claims set forth in the Amended Complaint are barred by res judicata and due to be dismissed.

## C.    Plaintiff's Motion to Amend

Plaintiff has filed a motion to amend her Amended Complaint. <u>See</u> <u>generally</u> Plaintiff's Motion to Amend. In that motion, Plaintiff seeks leave to amend her claims in this action to (1) account for "new evidence"; (2) provide more detailed allegations and more clearly identify which facts support each claim; (3) eliminate her defamation claim; (4) add a claim for invasion of privacy; and (5) add a claim under 15 U.S.C. § 8131[15] based on Defendant's alleged purchase of the rosananassar.com domain. <u>See</u> Memorandum in Support of Plaintiff's Renewed Motion for Leave to File Second Amended Complaint at 1–2. Because the Court has already concluded that the claims raised in Plaintiff's Amended Complaint are due to be dismissed based on res judicata, the Court must consider whether Plaintiff's proposed amendments would be futile.

---

[14] Significantly, Defendant does not challenge this Court's personal jurisdiction over him.

[15] Plaintiff cites 15 U.S.C. § 1129, but that provision has been moved to § 8131.

Pursuant to Fed. R. Civ. P. 15(a)(2), the Court "should freely give leave [to amend a pleading] when justice so requires." While such leave is not an automatic right, see Reese v. Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008); Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002), the "decision whether to grant leave to amend is within the sound discretion of the trial court." Jameson v. Arrow Co., 75 F.3d 1528, 1534 (11th Cir. 1996). If a more carefully drafted complaint might state a claim, a court must give a pro se party at least one chance to amend the complaint before dismissing it with prejudice. Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001). Here, Plaintiff has already been given an opportunity to amend her complaint. After Plaintiff filed this action, Defendant filed his First Motion to Dismiss. Plaintiff responded to that motion, and also filed an Amended Complaint which the Court struck. See Order (Doc. 43). Thereafter, Plaintiff sought and was given leave to file the Amended Complaint, see Order (Doc. 57), which is the operative pleading. Thus, Plaintiff was given the opportunity to replead after having the benefit of reviewing Defendant's arguments in support of dismissal. As such, it does not appear that leave to amend, yet again, would be required here. Nevertheless, leave to amend is not warranted where amendment would be futile. Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007). An amendment is futile if the complaint as amended would still be subject to dismissal. Id.[16]

---

[16] Because Plaintiff seeks leave to amend both to provide additional detail and allege additional claims concerning events occurring before she filed her original Complaint and to allege new incidents that occurred after she filed her Complaint, her motion is both a motion to amend under Rule 15(a) and a motion to supplement under Rule 15(d). However, in either circumstance the decision as to whether to allow the new pleading is left to the Court's discretion. See Fed. R. Civ. P. 15(d), Advisory Cmte. Note to 1963 Amendment. Moreover, the standards for ruling on each type of request are essentially the same. See Glatt v. Chicago Park Dist., 87 F.3d 190, 194 (7th Cir. 1996); Lewis v. Knutson, 699 F.2d 230, 239 (5th Cir. 1983).

Plaintiff's Proposed Second Amended Complaint alleges in much greater detail the specific incidents underlying her claim for intentional infliction of emotional distress. See Proposed Second Amended Complaint (Doc. 98-2) at 2–21. To the extent that those alleged incidents predate the filing of Plaintiff's Third Amended State Court Counterclaim, Plaintiff's claims would remain barred by res judicata. Simply providing more detailed allegations does not cure the defect in Plaintiff's Amended Complaint: that she previously sought and was denied relief based on the alleged incidents. Any allegations of "stalking" by individuals purportedly hired by Defendant before August 27, 2014, would necessarily have been encompassed in Plaintiff's counterclaims for intentional infliction of emotional distress and stalking because those counterclaims were based on Plaintiff's allegation that Defendant had "been [s]talking [her] unmercifully [sic] since 2005 through private investigators and security officers." See Third Amended State Court Counterclaim at 9–10. Additionally, for the reasons discussed supra with respect to Plaintiff's cybersquatting claim, Plaintiff's proposed claim under 15 U.S.C. § 8131 is barred by res judicata because Plaintiff previously sought relief based on Defendant's alleged purchase of rosananassar.com. Thus, any amendment to allege new facts or claims based on events predating Plaintiff's Third Amended State Court Counterclaim would be futile.

To the extent that Plaintiff alleges incidents that postdate the filing of her Third Amended State Court Counterclaim, her claims based on those allegations would not be barred by res judicata. "[C]ourts customarily have treated requests to supplement under Rule 15(d) liberally." U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 7 (1st Cir. 2015); see also United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 182 F. App'x 921, 924–25 (11th Cir. 2006) ("We have accepted a policy

of liberal amendments and supplements to the pleadings under Rule 15."). However, a motion to supplement a pleading may be denied if the totality of the circumstances weigh against allowing supplementation. For instance, granting leave to supplement a pleading may be denied where allowing supplementation would "unduly delay resolution of the case," or when the party unreasonably delayed in attempting to supplement. <u>Gadbois</u>, 809 F.3d at 7 (internal quotation marks omitted). Moreover, Rule 15(d), by its terms, permits supplementation only to "set[ ] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A court's ultimate consideration in deciding whether to allow a party to supplement a pleading is whether the proposed supplementation would promote the efficient administration of justice. <u>See</u> <u>W. Ala. Women's Ctr. v. Miller</u>, No. 2:15cv497-MHT, 2016 WL 3621273, at *4 (M.D. Ala. July 5, 2016).

Considering the totality of the circumstances, the Court concludes that permitting Plaintiff to supplement her Amended Complaint would not promote the efficient administration of justice. As an initial matter, it appears that none of the newly alleged incidents occurred after she filed her Amended Complaint. <u>See</u> Proposed Second Amended Complaint ¶¶ 49–50, 53, 56–58, 75. Thus, under the terms of Rule 15(d), supplementation is inappropriate. <u>See</u> Fed. R. Civ. P. 15(d) (stating that a party may supplement a pleading to "set[ ] out any transaction, occurrence, or event <u>that happened after the date of the pleading to be supplemented</u>." (emphasis added)). Moreover, most of the new events allegedly occurred a year or more before Plaintiff moved to supplement

her Amended Complaint.[17] In light of that fact, it is apparent that Plaintiff has unreasonably delayed in requesting leave to supplement her pleading with those allegations. Additionally, permitting Plaintiff to supplement her pleading at this stage would unduly delay the proceedings. This case has been pending for nearly two years. Because the Court concludes that Plaintiff's Amended Complaint is due to be dismissed in its entirety based on res judicata, permitting Plaintiff to supplement would, in effect, result in starting the case over entirely. Such a result would not promote the interests of justice. Accordingly, Plaintiff's Motion to Amend will be denied.

## III. Conclusion

In light of the foregoing, Plaintiff's Motion to Take Judicial Notice is due to be denied; Defendant's Motion to Dismiss is due to be granted; Plaintiff's Motion to Amend is due to be denied, and this action is due to be dismissed. Accordingly, it is hereby

**ORDERED:**

1.   Plaintiff's Motion to [sic] Judicial Notice (Doc. 66) is **DENIED**.

2.   Defendant's Motion to Dismiss Amended Complaint and Memorandum in Support (Doc. 63) is **GRANTED**, and the Amended Complaint is **DISMISSED**.

3.   Plaintiff's Renewed Motion for Leave to File Second Amended Complaint (Doc. 98) is **DENIED**.

---

[17] The only relatively recent allegation states that "in the first quarter of 2016," Plaintiff noticed that she was being followed by a car apparently associated with a security agency and confronted the driver. See Proposed Second Amended Complaint ¶ 57.

4.     The Clerk of the Court is directed to enter judgment in favor of Defendant

Eduardo Boulhosa Nassar, terminate all pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 3rd day of January, 2017.

MARCIA MORALES HOWARD
United States District Judge

lc21
Copies to counsel of record and pro se parties